

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00630-CV

**IN THE INTEREST OF A.O.G. AND A.J.G.**, Children

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2018PA02451
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Beth Watkins, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
        Luz Elena D. Chapa, Justice
        Beth Watkins, Justice

Delivered and Filed:  February 26, 2020

AFFIRMED

Appellant J.P. appeals the trial court's order terminating his parental rights to his children A.O.G. (born 2009) and A.J.G. (born 2014).[1]  J.P. argues the evidence is legally and factually insufficient to support the trial court's finding that termination was in the best interests of his children.  We affirm the trial court's order.

### BACKGROUND

J.P. had four children with D.M.—A.G., J.G., A.O.G., and A.J.G.  In October of 2018, the Texas Department of Family and Protective Services ("the Department") sent Investigator Jessica Williams to visit D.M. in the hospital after she was shot eight times.  According to D.M., her ex-

---

[1] To protect the minors' identities, we refer to the parents and children using aliases.  *See* TEX. R. APP. P. 9.8.

boyfriend J.P. shot her as she was getting into her car to pick up her children from school. At the time of the shooting, A.J.G. was in the backseat of the car.

After the shooting, the State charged J.P. with two counts of assault with a deadly weapon against a family member and one count of child endangerment. J.P. is currently incarcerated on those charges.

When Williams visited D.M. in the hospital, D.M. asked the Department to place all of her children with her sister. D.M. needed assistance caring for her children and herself because she had sustained multiple injuries and was unable to use her right arm. That same month, the Department filed a petition seeking termination of J.P.'s parental rights to all four of his children. After J.P.'s parental rights to A.G. and J.G. were terminated, the Department pursued termination of J.P.'s parental rights to A.O.G. and A.J.G.[2]

On August 20, 2019, the trial court held a one-day bench trial at which J.P. appeared by video. The trial court heard testimony from three witnesses: (1) Williams; (2) D.M.; and (3) Department Caseworker Sheri Blauser-Leckie. At the conclusion of trial, the court signed an order terminating J.P.'s parental rights to A.O.G. and A.J.G. pursuant to section 161.001(b)(1) (E) and (N) and finding that termination of his parental rights was in the best interests of the children. J.P. now appeals.

## ANALYSIS

### Standard of Review

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In*

---

[2] As a result, this appeal only concerns J.P.'s parental rights to his two youngest children—A.O.G. and A.J.G.

*re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied) (internal quotation marks omitted). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department had the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate J.P.'s parental rights and that termination was in the best interests of the children. TEX. FAM. CODE ANN. §§ 161.001, 161.206; *In re A.V.*, 113 S.W.3d 355, 358 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the legal and factual sufficiency of evidence supporting a trial court's order of termination, we apply well-established standards of review. *See* TEX. FAM. CODE §§ 101.007, 161.206(a); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). To determine whether the Department presented clear and convincing evidence, a legal sufficiency review requires us to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. We "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re R.S.-T.*, 522 S.W.3d 92, 98 (Tex. App.—San Antonio 2017, no pet.). "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *In re J.F.C.*, 96 S.W.3d at 266. Nevertheless, "we may not simply disregard undisputed facts that do not support the finding; to do so would not comport with the heightened burden of proof by clear and convincing evidence." *In re S.L.M.*, 513 S.W.3d 746, 748 (Tex. App.—San Antonio 2017, no pet.). If a reasonable factfinder could "form a firm belief or conviction" that the matter that must be proven is true, then the evidence is legally sufficient. *Id.* at 747.

In contrast, in conducting a factual sufficiency review, we must review and weigh all of the evidence, including the evidence that is contrary to the trial court's findings. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). We consider whether the disputed evidence is such that a reasonable factfinder could have resolved it in favor of the challenged finding. *In re J.F.C.*, 96 S.W.3d at 266. The evidence is factually insufficient only if the disputed evidence is so significant that a reasonable factfinder could not have formed a firm belief or conviction in favor of the challenged finding. *See id.*

In both a legal sufficiency review and a factual sufficiency review, the trial court, as factfinder, is the sole judge of the weight and credibility of the evidence. *In re E.X.G.*, No. 04-18-00659-CV, 2018 WL 6516057, at *1 (Tex. App.—San Antonio Dec. 12, 2018, pet. denied) (mem. op.). We must defer to the factfinder's resolution of disputed evidentiary issues, and cannot substitute our judgment for that of the factfinder. *See, e.g., In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency).

*Applicable Law*

There is a strong presumption that a child's best interest is served by maintaining the relationship between a child and the natural parent, and the Department has the burden to rebut that presumption. *See, e.g., In re R.S.-T.*, 522 S.W.3d at 97. In determining whether the Department satisfied this burden, the legislature has provided several factors for courts to consider regarding a parent's willingness and ability to provide a child with a safe environment.[3] TEX. FAM.

---

[3] These factors include, inter alia: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department or other agency; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family

CODE ANN. § 263.307(b). Courts may also apply the list of factors promulgated by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).[4]

A best interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). Additionally, evidence that proves a statutory ground for termination is probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). Finally, "[a] trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

### *Application*

J.P. argues the evidence is insufficient to support the trial court's finding that termination of his parental rights was in his children's best interests because the Department failed to produce evidence supporting the *Holley* factors. According to J.P., there was no expert testimony regarding

---

or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE ANN. § 263.307(b).

[4] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

the children's well-being, and no evidence he harmed the children. J.P. also argues the Department failed to provide him an adequate service plan.

Here, the Department produced evidence that J.P. is currently incarcerated and facing two counts of assault with a deadly weapon against a family member and one count of child endangerment after allegedly shooting D.M. Williams testified that J.P. was charged with child endangerment because A.J.G. was present when J.P. shot D.M., and A.J.G. recounted that glass broke around her. This court has recognized that "[a] parent's tendency toward violence is relevant to the trial court's best interest determination." *In re J.A.T.*, No. 04-17-00386-CV, 2017 WL 4937960, at *3 (Tex. App.—San Antonio Nov. 1, 2017, no pet.) (mem. op.); *see also In re A.M.Y.*, No. 04-15-00352-CV, 2015 WL 6163212, at *4 (Tex. App.—San Antonio Oct. 21, 2015, no pet.) (mem. op.) (stating exposure of domestic violence supports best interest finding). D.M. testified she and J.P. had been in a relationship for thirteen years. She testified that a few months after she broke up with him, as she was leaving her apartment to pick up her children from school, he shot her. She testified she was putting her car into reverse when she heard nonstop bullets from behind her. She immediately froze, and then rolled out of the car, opened the backdoor to get A.J.G. who was in the backseat, and ran to her apartment. She testified that although she did not see the shooter's face, she knew it was J.P. because she recognized his "distinctive run." She also recognized the car the shooter drove as belonging to J.P.'s mother.

The Department also presented evidence that J.P. had a criminal arrest history, which included charges for evading and resisting arrest and assault causing bodily injury. This court has recognized a parent's inability to maintain a lifestyle free from arrests is relevant to a best interest determination because such conduct subjects children to uncertainty and endangers their emotional well-being. *In re J.A.T.*, 2017 WL 4937960, at *4. Williams testified that in addition to these charges, J.P. is a registered sex offender. *See In re S.G.*, No. 01-18-00728-CV, 2019 WL 1448870,

at *8 (Tex. App.—Houston [1st Dist.] April 2, 2019, pet. denied) (mem. op.) (considering father's status as sex offender in best interest determination).

The trial court also heard evidence that prior to his arrest, J.P. was unable to financially provide for his children. D.M. testified that during their thirteen-year relationship, J.P. did not have stable employment. *See In re D.M.*, 452 S.W.3d 462, 472 (Tex. App.—San Antonio 2014, no pet.) ("The stability of the proposed home environment is an important consideration in determining whether termination is in the child's best interest."). She testified that although they received housing assistance, there were times they were unable to pay the electric bill and would have to seek assistance from a local church. She added, however, that when J.P. did not work, he stayed home and watched A.J.G.

The Department also produced evidence that J.P.'s actions affected the emotional needs of the children. D.M. testified that A.J.G. is traumatized and is currently in counseling. She also testified that since the shooting, A.J.G. refuses to go outside at night and runs inside if she hears a loud noise because she believes people are shooting. Williams described A.J.G. as extremely traumatized by the shooting and explained A.J.G. was able to replay the incident in great detail, including that her father shot her mother and that she saw her mother covered in blood. Williams testified A.J.G. remembered glass breaking all around them and seeing her mother bleeding from her right arm. Williams also testified that as A.J.G. recalled these details, she expressed fear of J.P. *See In re D.G.*, No. 04-02-00893-CV, 2003 WL 22489643, at *7 (Tex. App.—San Antonio Nov. 5, 2003, no pet.) (mem. op.) (considering child's fear toward parent in best interest analysis). Blauser-Leckie also confirmed A.J.G. was traumatized and has nightmares about the shooting.

Finally, the Department produced evidence that the children are currently living with D.M. and her boyfriend, who are meeting the children's physical and emotional needs. *See In re A.M.J.*, No. 04-19-00546-CV, 2019 WL 6137498, at *2 (Tex. App.—San Antonio Nov. 20, 2019, no pet.)

(mem. op.) (considering children's well-being in current placement in best interest analysis). Blauser-Leckie testified that she has observed the family multiple times, including on unannounced visits, and believes the children have a strong bond with their mother. Blauser-Leckie testified the entire family utilizes the Department's services and the children are doing well in school. She added that the Department believes the children should stay with their mother and that J.P.'s parental rights should be terminated. Both Blauser-Leckie and Williams testified they believed J.P. was too dangerous to be around the children. Blauser-Leckie added that J.P.'s parental rights to his two other children had already been terminated. *See In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013) (considering removal of four other children in best interest determination).

Based on this evidence, we conclude that a reasonable factfinder could have formed a firm belief or conviction that termination of J.P.'s parental rights was in the best interests of the children. *See In re S.L.M.*, 513 S.W.3d at 750. The Department produced evidence that J.P. had a violent criminal history, did not provide a stable home for the children, and had his parental rights to his other two children terminated. It also produced evidence that all the children were greatly impacted by the shooting and their mother's injuries, but were now doing well with their mother. Accordingly, we conclude that when viewing this evidence in the light most favorable to the trial court's finding, the evidence is legally sufficient to support the trial court's finding that termination of J.P.'s parental rights was in the best interests of A.O.G. and A.J.G. *See In re J.F.C.*, 96 S.W.3d at 266.

Turning to the factual sufficiency challenge, J.P. points out that the Department did not produce expert testimony regarding the children's well-being or evidence that it created a service plan tailored to J.P.'s incarceration. However, J.P. does not cite any legal authority requiring the Department to produce expert testimony, nor do we find any. *See In re L.G.R.*, 498 S.W.3d 195, 203 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (holding expert testimony not required

in termination case). As to J.P.'s service plan, Blauser-Leckie testified she prepared a service plan for J.P., but admitted it was not tailored to J.P.'s incarceration, and J.P. told her he was not allowed to participate in any classes. The trial court also heard evidence that J.P. wrote two letters to A.O.G. and A.J.G. while he was incarcerated. Although this evidence may show that J.P. loves his children and is unable to complete the Department's service plan while in custody, the Department also produced evidence establishing J.P. is dangerous and his children are afraid of him.

After reviewing all the evidence—including the evidence on which J.P. relies—we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of J.P.'s parental rights was in the best interests of the children. We therefore overrule J.P.'s arguments to the contrary and hold that legally and factually sufficient evidence supports the trial court's finding, by clear and convincing evidence, that termination of J.P.'s parental rights was in the best interests of A.O.G. and A.J.G. *See In re S.L.M.*, 513 S.W.3d at 750.

## CONCLUSION

We affirm the trial court's order of termination.

Beth Watkins, Justice